Andrew T. Ryan (SBN 227700)
THE RYAN LAW GROUP
317 Rosecrans Ave.
Manhattan Beach, California 90266
Tel: 310-321-4800
Fax: 310-496-1435
andrew.ryan@theryanlawgroup.com

Attorneys for Plaintiff
Stepan Rudenko

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| STEPAN RUDENKO, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STAR CREATIONS INC., d/b/a AJ MADISON, INC.,<br><br>Defendant. | Case No.: 2:26-CV-05501-SVW-KS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Table of Contents

I. INTRODUCTION .......... 1
II. PARTIES .......... 2
III. JURISDICTION AND VENUE .......... 2
IV. APPLICABLE LAW .......... 3
V. GENERAL ALLEGATIONS .......... 4
A. Defendant's deceptive sales .......... 4
B. Plaintiff's Purchase of Falsely Advertised Products From the Website .......... 9
C. No adequate remedy at law .......... 15
D. Research Shows That the Use of Reference Price Advertising Schemes Similar to Defendant's Influences Consumer Behavior and Affects Consumers' Perception of Value .......... 16
VI. CLASS ACTION ALLEGATIONS .......... 18
VII. CLAIMS FOR RELIEF .......... 23
VIII. PRAYER FOR RELIEF .......... 42

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff Stepan Rudenko ("Plaintiff") files this First Amended Class Action Complaint, on behalf of himself and all others similarly situated, and hereby alleges the following:

## I. INTRODUCTION

1. This action is brought against Defendant Star Creations, Inc., which does business under the name AJ Madison ("AJ Madison" or "Defendant") for false and deceptive pricing practices in connection with Defendant's sale of home appliances on the website https://www.ajmadison.com/ (the "Website"). AJ Madison markets itself as "Your Appliance Authority" and sells a wide range of home appliances, including refrigerators, dishwashers, microwaves, ovens, and other household products.

2. AJ Madison sells home appliances through the Website and other online channels. Unfortunately, Defendant advertises fake and inflated comparison reference prices to deceive customers into a false belief that AJ Madison is offering its products at deeply discounted bargain prices. For example, anyone visiting the Website on a given day may see products advertised with a struck-through or "compare at" price displayed alongside a lower purported "sale" price. The products are offered for sale with a purported original or regular value alongside the purported sale offer. In doing so, Defendant misleads its customers into believing that they are receiving a significant discount from the ordinary price for these products. This is deception because Defendant rarely, if ever, sold in the recent past on the Website or elsewhere these products for the purported original or "compare at" amount.

3. Stated differently, Defendant's advertised "sales" are not really sales at all. It is a misrepresentation that Defendant repeats across its product lines. The reference prices that Defendant advertises are fictitious and fake, because they are not original, regular, retail, or former prices. They are inflated prices posted to lure unsuspecting customers into jumping at a fictitious "bargain" and intended to mislead

customers into believing that the value of the products they are buying are higher than reality. That is, Defendant engages in this deceptive advertising and pricing scheme to give customers the false impression that they are getting a bargain when they are being swindled by fake sales and promotions. Defendant exacerbates this deception by advertising that its purported sales are limited in time, where the same or substantially similar "sales" are offered continuously or almost continuously.

4. As a result, customers are deceived into spending money they otherwise would not have spent, purchasing products they otherwise would not have purchased, spending more money for products than they otherwise would have absent the deceptive marketing, and/or are receiving a value less than bargained for.

5. By this action, Plaintiff seeks to put an immediate end to Defendant's untruthful marketing practices and recover restitution and damages on behalf of all persons who have fallen victim to Defendant's sham sales by purchasing products on the Website from May 2022 to the present.

## II. PARTIES

6. Plaintiff Stepan Rudenko is a citizen of the State of California, residing in Valley Glen, Los Angeles County, California.

7. On information and belief, Defendant Star Creations Inc. (d/b/a AJ Madison) is a corporation organized under the laws of the State of New York, with its principal place of business at 3605 13th Avenue, Brooklyn, New York 11218, doing business through its website www.ajmadison.com.

8. Plaintiff is informed and believes, and based thereon alleges, that each defendant engaged in, authorized, ratified, and/or directed the wrongful conduct alleged herein and is, therefore, legally responsible for Plaintiff's injuries and damages.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under the Class Action

Fairness Act of 2005. Pursuant to 28 U.S.C. §1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

10. This Court has personal jurisdiction over Defendant, because Defendant conducts professional and commercial activities in California on a substantial, continuous, and systematic basis, including the sale and shipment of home appliances to California consumers through the Website, and therefore Defendant is subject to the general jurisdiction of the courts in this state.

11. The claims asserted in this complaint arise out of or are related to Defendant's professional and commercial activities within California, including the sale and delivery of products to Plaintiff in Los Angeles County, and therefore Defendant is subject to the specific jurisdiction of the courts of this state.

12. Venue is proper in this Court because Plaintiff resides in Los Angeles County and the acts giving rise to Plaintiff's claims occurred in substantial part in this County.

## IV. APPLICABLE LAW

13. Plaintiff is a citizen and resident of California. He accessed the Website and ordered Defendant's product from California and received the product in California.

14. California's substantive laws may be constitutionally applied to the claims of Plaintiff under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiff, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

15. California has an interest in regulating Defendant's conduct under its

laws, and Defendant's engagement in the challenged conduct directed at and affecting California consumers renders the applicability of California law to the claims herein constitutionally permissible.

16. The application of California laws is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff, and California has a greater interest in applying its laws here than any other interested state.

## V. GENERAL ALLEGATIONS

### A. Defendant's deceptive sales

17. On information and belief, AJ Madison is an online retailer of home appliances, marketing itself as "Your Appliance Authority." AJ Madison sells a wide range of household appliances—including refrigerators, dishwashers, microwaves, washing machines, dryers, ovens, and related products—through the Website.

18. Defendant's business model relies on deceiving customers with fake sales. On a typical day, Defendant prominently displays on the Website various products with struck-through or "compare at" reference prices alongside purportedly discounted sale prices, creating the false impression that the products are being offered at a substantial markdown.

19. Many of the products advertised by Defendant are represented as being marked down from a substantially higher reference price (hereafter, the "Reference Price"). The supposed markdowns are represented to the customer by prominently displaying a struck-through Reference Price, a "compare at" price, or an "original" price next to the sale price. Defendant employs these deceptive tactics to convey to customers that the product was offered in the recent past at the Reference Price, but is being offered to the customer at a substantial discount for a limited time.

20. However, this Reference Price is almost always, if not always, a falsely inflated price because Defendant rarely, if ever, sells its products at the Reference

Price. Further, the Reference Price does not accurately reflect the prevailing price of those products offered by other retailers.

21. The only purpose of the Reference Price is to mislead customers into believing that the displayed Reference Price is an original, regular, or retail price at which Defendant usually sells the product or previously sold the product in the recent past. As a result, Defendant falsely conveys that customers are receiving a substantial markdown or discount, when the alleged discount is false and fraudulent because the Reference Price is inflated.

22. Compounding the deception, the Website will often display messages of urgency, such as limited-time offers, sale countdown timers, or notices that a particular deal will expire soon. Below is a representative example of such a purported time-limited sale on the Website:




23. This is designed to mislead customers into believing they need to rush to take advantage of the fake promotions, although Defendant runs promotions or sales continuously or nearly continuously.

24. Based on counsel's pre-filing investigation, Defendant offered its products, including home appliances such as microwaves, refrigerators, and dishwashers, on sale continuously or nearly continuously, and routinely displayed inflated Reference Prices that did not reflect prices at which the products were actually sold for any reasonably substantial period of time by Defendant or other sellers.

25. For example, as shown on December 19, 2024, the Website advertised a Year-End Closeout Sale for savings of up to 65% and warned customers that prices would increase on January 1, 2025:




Soon thereafter, on January 8, 2025, the Website was advertising another purported sale:




Similar fake sales persisted throughout the year until present:







26. Defendant's pricing practices on the Website illustrate the pervasive nature of these fake sales. Upon information and belief, the Website routinely displays products with inflated Reference Prices alongside purportedly discounted sale prices, creating a pattern and practice of deceptive reference pricing across Defendant's product lines.

27. These pricing and advertising practices reflecting high-pressure fake

sales are deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from Defendant supposedly on sale and at a substantial and deep discount. The truth is that Defendant rarely, if ever, sells any of its purportedly discounted products at the Reference Price. The Reference Price is, therefore, an artificially inflated price. In turn, the advertised discounts are thus nothing more than phantom markdowns.

28. On information and belief, Defendant has more access to information regarding the historic sale prices and discount offers for the products offered for sale and sold on the Website than is available to Plaintiff.

29. Reasonable consumers interpret Defendant's sale advertisements and strikethrough prices to mean that they will be getting a discount "off" of the former or regular prices that Defendant formerly and usually charges for its products. In other words, reasonable consumers believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. This creates a sense of value and urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

30. Reasonable consumers also believe that the list prices Defendant advertises represent the true market value of the products, and are the prevailing prices for those products; and that they are receiving discounts from those listed regular prices.

31. In truth, however, Defendant almost always offers discounts. As a result, the list prices Defendant advertises are not actually Defendant's regular, former, or prevailing prices. And the purported discounts are illusory.

32. By definition, reasonable consumers expect a sale to be time limited (otherwise, it is not a sale, it is just the regular price). Defendant further emphasizes

the supposed time-limited nature of its sales by, for example, attributing them to occasions (e.g., Memorial Day, Year End Closeout) and displaying countdown timers for its sale.

33. Defendant's fake sales work because reasonable consumers are not fake sale detectives. Reasonable consumers are not monitoring the website and competing websites every day for months or years. And even a consumer who occasionally checks the website would reasonably believe that there happened to be another legitimate sale. As illustrated above, discovering Defendant's deception required extensive mining of internet archives.

### B. Plaintiff's Purchase of Falsely Advertised Products From the Website

34. Plaintiff fell victim to Defendant's false advertising and deceptive pricing practices. On or about January 25, 2026, Plaintiff visited the Website to purchase a Whirlpool 0.9 cu. ft. Countertop Microwave Oven. During the purchase process, Defendant displayed the product with a Reference Price that was higher than the sale price at which the product was offered, creating the false impression that Plaintiff was receiving a substantial discount from Defendant's regular or original price.

35. Plaintiff saw on the Website a sale offer similar to the one shown below:



36. Plaintiff read and relied on the sale representation, which was important in driving his purchase. In particular, Mr. Rudenko read and relied on the representation that the product had a higher Reference Price displayed on the Website but was being offered at a discounted sale price. Plaintiff paid $158.00 for the microwave (plus $99.00 for delivery and $25.06 in sales tax, for a total of $282.06) pursuant to Order No. 203416175.

37. Based on Defendant's representations described above, Plaintiff reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the product he was purchasing at the published regular price (shown in strikethrough font), that the regular price was the prevailing price and market value of the product that he was buying, that he was receiving the advertised discount as compared to the regular price, that the advertised discount was only available for a limited time (during the limited time promotion), and that the product would go back to retailing for the published regular price when the promotion ended.

38. Defendant also introduces inflated delivery costs late in the checkout process that leaves customers paying more than the initially advertised price for their purchases.

39. Based on these representations from Defendant, Plaintiff reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the product he was purchasing at the published Reference Price, that the Reference Price was the prevailing price and market value of the product that he was buying, that he was receiving the advertised discount as compared to the Reference Price, that the advertised discount was only available for a limited time, and that the product would go back to retailing for the published regular price when the promotion ended.

40. The truth, however, is that the microwave Plaintiff purchased was not

substantially marked down or discounted, or at the very least, any discount he was receiving had been grossly exaggerated. That is because the product Plaintiff bought had not been offered for sale on the Website (or anywhere else) for any reasonably substantial period of time (if ever) at the full Reference Price. In fact, for at least the 90-day period prior to Plaintiff's purchase (and likely for a longer period), Defendant had not offered the product sold to Plaintiff at the Reference Price and regularly sold that product at or near the price Plaintiff actually paid. Those Reference Prices were fake prices used in Defendant's deceptive marketing scheme.

41. On information and belief and based on counsel's pre-filing investigation, the price offered by other retailers for the same product purchased by Plaintiff at around the same time was materially less than the purported discount price advertised on Defendant's Website. For example, Home Depot advertises the same product for $129 and Best Buy advertises it for $149. Amazon advertises a "list price" for the same product of $159, almost exactly what Defendant advertised as the discounted price as its Website.

42. Plaintiff did not investigate the prices at these competing websites because he reasonably believed that he was receiving a substantial, time-limited discount from Defendant and acted with the urgency those fake sales were designed to induce.

43. On information and belief, Defendant's Website is designed to discourage consumers from comparing prices with other retailers. Defendant creates false urgency through countdown timers, limited-time sale representations, notifications that deals would expire soon, and similar messages, causing Plaintiff and other consumers to act quickly rather than comparison shop.

44. Defendant presented the Reference Price in a manner that conveyed that it was the prevailing market price for the product, and that the sale price reflected a real markdown from that price. A reasonable consumer viewing this affirmative

representation from a retailer held out as an authority on home appliances would have no reason to doubt its accuracy or investigate further.

45. Merely because alternative pricing information may exist elsewhere on the Internet does not render a consumer's reliance on a retailer's own price representations unreasonable as a matter of law, particularly where, as here, the retailer affirmatively created a false impression of value and urgency.

46. Plaintiff's reliance was reasonable in light of Defendant's specific, affirmative misrepresentations about the product's value and the urgency of the sale.

47. In addition, consumers who are presented with discounts are substantially more likely to make a purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[1] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[2]

48. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[3]

49. Defendant knows that the Reference Prices are fake and artificially inflated and intentionally uses them in its deceptive pricing scheme on the Website to increase sales and profits by misleading Plaintiff and members of the putative class to believe that they are buying products at a substantial discount.

---

[1] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[2] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[3] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

50. Defendant thereby induces customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Defendant was simply being truthful about its "sales."

51. Therefore, Plaintiff would not have purchased the product, or at the very least, would not have paid as much as he did, had Defendant been truthful. Plaintiff was persuaded to make his purchase and paid as much as he did as a result of Defendant's misrepresentations in connection with the Reference Price that Plaintiff saw in making his purchase.

52. Plaintiff was harmed by Defendant's false advertising, because but for Defendant's misrepresentations, Plaintiff would not have made his purchase or would not have been willing to pay as much as he did.

53. Plaintiff would not have been willing to pay as much as he did for the product he purchased from Defendant had he received complete and truthful information relating to Defendant's Reference Price on the Website. Plaintiff is entitled to restitution in at least the form of the difference between the price he actually paid and the price a reasonable consumer would have paid absent the Reference Price.

54. Plaintiff was further harmed because the value of the product he received was less than the price he paid. Specifically, as a result of Defendant's misleading practices, Plaintiff paid approximately $282 for a product that was worth less than $160.

55. Plaintiff was further harmed because he did not receive the expected discount or benefit-of-the-bargain advertised by Defendant. When Plaintiff and other members of the putative class purchase Defendant's products, they accept offers that Defendant made. Each offer was to provide products having a particular listed regular price and market value, and to provide those products at the discounted price advertised on the Website.

56. The Website lists the Reference Price of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices and the prices paid by Plaintiff and putative class members. These were specific and material terms of the contract. These promises were also express warranties: affirmations of fact about the products and a promise relating to the goods. Plaintiff and other members of the putative class performed their obligations under the contract by paying for the items they purchased. Defendant breached its contract by failing to provide Plaintiff and other members of the putative class with products that have a regular price and market value equal to the Reference Price displayed, and by failing to provide the promised discounts. Defendant breached its express warranties for the same reasons.

57. Defendant's conduct at issue in this lawsuit is ongoing. Defendant continues to advertise fake sales on its Website after the filing of this lawsuit and after being provided notice with its violations of California's Consumer Legal Remedies Act.

58. Plaintiff faces an imminent threat of future harm. Plaintiff will likely purchase home appliances in the future, including from Defendant, if he could feel sure that Defendant's regular prices were honest and that sales were real. But without a court injunction ordering Defendant to only advertise honest regular prices and honest sales, Plaintiff is unable to rely on Defendant's sales or supposed regular prices in the future.

59. Further, Defendant's deceptive sale advertisements pollute the data regarding the regular prices for home appliances in the market as a whole, thereby harming Plaintiff and other consumers in their ability to evaluate the value of the deals being offered by Defendant and its competitors.

60. Defendant's use of misleading countdown timers further deceptively discourages users from searching for better prices from other retailers.

61. Without a court injunction ordering Defendant to only advertise honest regular prices and honest sales, Plaintiff is unable to rely on Defendant's sales or supposed regular prices in the future, and so cannot purchase products he would otherwise like to purchase.

**C. No adequate remedy at law**

62. Plaintiff seeks damages and, in the alternative, restitution and disgorgement. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law. The availability of legal remedies is uncertain and legal damages may not fully capture the extent of Defendant's wrongful gain.

63. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of his legal claims.

64. Further, Defendant has challenged the sufficiency of Plaintiff's damages claims and remedies at law, including arguing that certain common law and statutory claims should be dismissed, thereby making the availability of legal damages uncertain. Defendant has challenged Plaintiff's ability to seek damages under the CLRA and has challenged the sufficiency of Plaintiff's allegations for the misrepresentation and contract claims. The elements Defendant challenges with respect to the CLRA, misrepresentation and contract claims are not required for Plaintiff's UCL and FAL claims.

65. Further, obtaining a full refund at law is less certain than obtaining a refund in equity. The equitable remedies of restitution and disgorgement are appropriate because Defendant has been unjustly enriched through its deceptive pricing practices. Defendant's wrongful gain includes the price premiums obtained from Plaintiff and class members, and legal damages may not fully capture the extent of that wrongful gain. In addition, Plaintiff purchased a product he would not otherwise have purchased, but for Defendant's representations, and therefore seeks rescission and restitution in the alternative.

66. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

67. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm.

**D. Research Shows That the Use of Reference Price Advertising Schemes Similar to Defendant's Influences Consumer Behavior and Affects Consumers' Perception of Value**

68. The effectiveness of Defendant's deceitful pricing scheme is backed up by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992). Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower

price decreases." *Id*. at 56. For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing, as Plaintiff's claims here, had standing to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

69. Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id*.

70. In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value…Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

71. Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225

(2003).

72. The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990). This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." *Id*.

73. The clear inference to be drawn from this research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed here by Defendant is intended to, and does in fact, influence customer behavior—as it did Plaintiff's purchasing decision here—by artificially inflating customer perceptions of a given product's value and causing customers to spend money they otherwise would not have, purchase products and items they otherwise would not have, and/or spend more money for a product or service than they otherwise would have absent the deceptive advertising.

## VI. CLASS ACTION ALLEGATIONS

74. Plaintiff brings this action individually and as a representative of all those similarly situated, on behalf of the below-defined class:

> <u>California Class:</u> All persons who, while in the State of California, purchased one or more products from AJ Madison's Website (www.ajmadison.com) at a stated discount from a higher reference price during the period from four years preceding the filing of this Complaint through the present (the "Class Period").
>
> <u>Nationwide Class:</u> All persons in the United States who purchased one or more products from AJ Madison's Website at a stated discount from a higher reference price during the Class Period.

75. The following people are excluded from the proposed class: (1) any

Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

76. Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

77. This case is appropriate for class treatment because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

78. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class.

79. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described herein.

80. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously.

81. **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

(a) Whether, during the Class Period, Defendant advertised false Reference Prices for products offered on the Website.

(b) Whether, during the Class Period, Defendant advertised price discounts from false Reference Prices for products offered on the Website.

(c) Whether the products advertised by Defendant during the Class Period were offered at their Reference Prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their Reference Prices.

(d) Does Defendant's deceptive pricing scheme using false Reference Prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.?

(e) Does Defendant's deceptive pricing scheme using false Reference Prices constitute "unfair, deceptive, untrue or misleading advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq*.?

(f) Does Defendant's deceptive pricing scheme using false Reference Prices constitute false advertising in violation of the California False Advertising Law under Business & Professions Code section 17500, *et seq*.?

(g) Does Defendant's deceptive pricing scheme using false Reference Prices constitute a violation of the California Consumer Legal Remedies Act California Civil Code §§1750, *et seq*.?

(h) Whether Defendant's use of fictitious Reference Prices on products during the Class Period constitutes false representations.

(i) Whether and when Defendant knew or learned that false Reference Prices on products during the Class Period were false representations.

(j) What did Defendant hope to gain from using a false Reference Price scheme?

(k) What did Defendant gain from their false Reference Price scheme?

(l) Whether Defendant's use of false Reference Prices on products during the Class Period was material.

(m) Whether Defendant had a duty to disclose to their customers that the Reference Prices were fake "original" prices in furtherance of sham sales.

(n) To what extent did Defendant's conduct cause, and continue to cause, harm to the Class?

(o) Whether the members of the Class are entitled to damages and/or restitution.

(p) What type of injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising?

(q) Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

82. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of

the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party members of the Class to protect their interests.

83. **Ascertainability.** Upon information and belief, Defendant keeps extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer subscriptions, and general marketing programs. On information and belief, Defendant have one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

84. California law should apply to each of the putative class members.

85. To the extent a conflict of law exists for class members who reside outside of California, on information and belief, the business practices and advertising at issue in this action were directed at California consumers and Defendant transacted substantial business with California consumers through the Website.

86. On information and belief, each class member's purchases were consummated through the Website, with Defendant's acceptance of payment and processing of orders from its facilities. On information and belief, Defendant ships products to customers nationwide, including to California.

87. California therefore has a greater interest in regulating the business activities of retailers who direct substantial commercial activities at California consumers than the interest of another state where a consumer may reside that may have less restrictive regulations on business activities. Allowing advertising that violates explicit provisions of the FAL and CLRA to be directed at California consumers would harm California's interest in regulating the business conduct directed at its residents.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE §17200, *et seq*.)
### (By Plaintiff Against Defendant on Behalf of the California Class)

88. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

89. Plaintiff brings this cause of action on behalf of himself and the California Class.

90. California Business and Professions Code section 17200 *et seq*., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice"

as well as "unfair, deceptive, untrue or misleading advertising."

91. A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

92. Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant has engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, California Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

93. The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations (16 CFR 233, *et seq.*), false former pricing schemes similar to the ones employed by Defendant, are deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

> (c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual “bargain,” Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn’t care, for he maintains that price for only a few days. Then he “cuts” the price to its usual level—$7.50—and advertises: “Terrific Bargain: X Pens, Were $10, Now Only $7.50!” This is obviously a false claim. The advertised “bargain” is not genuine.
>
> (d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

16 C.F.R. § 233.1. The FTCA also prohibits the pricing scheme employed by Defendant regardless of whether the product advertisement and representations use the words “regular,” “original,” or “former” price:

> (e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as “Regularly,” “Usually,” “Formerly,” etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, “Sale,” the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been “Reduced to $9.99,” when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

16 C.F.R. § 233.1(e).

94. California law also expressly prohibits false former pricing schemes like the one employed by Defendant. California Business & Professions Code section 17501, entitled “Worth or value; statements as to former price,” states as follows:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

95. Moreover, Defendant's conduct also violates the California Consumer Legal Remedies Act ("CLRA"). *See* Cal. Civ. Code §§ 1750, et seq. More specifically, Defendant violated the CLRA provisions prohibiting businesses from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]" Cal. Civ. Code §1770(a)(13).

96. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

97. Here, Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in a misleading and deceptive pricing scheme by advertising and representing false Reference Prices and thereby falsely advertising and representing markdowns or "discounts" that were false and inflated. Defendant's deceptive marketing practice gave consumers the false impression that Defendant's products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were. Defendant also failed to adequately disclose the inflated shipping costs that effectively offset any purported discount. Defendant's acts and practices thus offended an established

public policy, and Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

98. The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

99. A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

100. Here, members of the public are likely to be deceived by Defendant's conduct as alleged above. Among other things, Defendant affirmatively misrepresented the Reference Prices of its products, which thereby misled and deceived customers into believing that they were buying products from Defendant at substantially marked down and discounted prices. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

101. In addition, Defendant had a duty to disclose the truth about their pricing deception, including, among other things, that the Reference Prices advertised and published on the Website were not, in fact, prices at which Defendant's products had sold for in the recent past for a reasonably substantial period of time, but that instead, in reality, Defendant's products rarely (if ever) were offered at the advertised Reference Prices. Defendant, however, concealed this material information from customers and the general public. Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

102. Plaintiff and each member of the Class suffered an injury in fact and

lost money or property as a result of Defendant's unlawful, unfair, and/or fraudulent business practices, and as a result of Defendant's unfair, deceptive, untrue or misleading advertising.

103. Plaintiff and each member of the Class was harmed by Defendant's use of false Reference Prices, because Plaintiff and each member of the Class would not have made their purchases or would not have paid as much as they did but for Defendant's misrepresentations.

104. Defendant was unjustly enriched by their misrepresentations with respect to Reference Prices, because those misrepresentations induced Plaintiff and each member of the Class to make purchases they otherwise would not have made or pay more for those purchases than they otherwise would have paid.

105. Plaintiff and each member of the Class was harmed because the value they received from Defendant's falsely advertised products was less than the money they paid.

106. Plaintiff and members of the Class lack an adequate remedy at law.

107. Plaintiff, on behalf of himself and the members of the Class, seeks restitution and disgorgement of all moneys received by Defendant through the conduct described above.

108. Plaintiff, on behalf of himself and the members of the Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including but not limited to, putting a stop to their deceptive advertisements and false Reference Prices in connection with their sale of products.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(CAL. BUS. & PROF. CODE §17500, *et seq.*)**
**(By Plaintiff Against Defendant on Behalf of the California Class)**

109. Plaintiff restates the foregoing paragraphs as if fully set forth herein.

110. Plaintiff brings this cause of action on behalf of himself and the California Class.

111. Similarly, another section of the FAL provides, in relevant part, that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

112. Here, Defendant routinely disseminated on the Website false Reference Prices for the products offered for sale on the Website, including to Plaintiff. Such statements of Defendant were untrue, or at the very least, were misleading. Among other things, Defendant rarely, if ever, offered its products on the Website at the Reference Prices displayed for each product. Further, Defendant rarely, if ever, offered products on the Website at the Reference Prices within the three months immediately preceding the publication of the Reference Prices. Defendant thus misled customers, including Plaintiff, into believing that the Reference Prices are or were genuine original, retail, or former prices and that the "sale" prices relative to the published Reference Prices, in fact, reflected real and substantial discounts. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

113. Defendant knew, or by the exercise of reasonable care should have known, that their dissemination of Reference Prices for the products it offered on the Website were untrue and/or misleading. Among other things, Defendant represented the Reference Prices in connection with the Defendant's products sold on the Website even though they knew, or in the exercise of reasonable care should have

known, that such products had rarely, if ever, sold at the Reference Prices.

114. Defendant also failed to adequately disclose the inflated shipping costs that effectively offset any purported discount.

115. As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money.

116. Plaintiff and each member of the Class was harmed by Defendant's use of false Reference Prices, because Plaintiff and each member of the Class would not have made their purchase or would not have paid as much as they did but for Defendant's misrepresentations.

117. Plaintiff and each member of the Class was harmed because the value they received from Defendant's falsely advertised products was less than the money they paid.

118. Defendant was unjustly enriched by their misrepresentations with respect to Reference Prices, because those misrepresentations induced Plaintiff and each member of the Class to make purchases they otherwise would not have made or pay more for those purchases than they otherwise would have paid.

119. Plaintiff and members of the Class lack an adequate remedy at law.

120. As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and all members of the Class, and to enjoin Defendant from continuing their false and misleading advertising practices in violation of California law in the future. Otherwise, Plaintiff, members of the Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(CAL. CIV. CODE §1750, *et seq.*)**
**(By Plaintiff Against Defendant on Behalf of the California Class)**

121. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

122. Plaintiff brings this cause of action on behalf of himself and the California Class.

123. The Consumer Legal Remedies Act of 1970, Cal. Civ. Code sections 1750 *et seq*. (the "CLRA") is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code §1760.

124. Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendant's sale of their products on the Website to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a).

125. Defendant violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendant's products: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; "(9) Advertising goods or services with intent not to sell them as advertised"; "(13) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; and "(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code §1770(a)(9), (13), (16).

126. Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things, (a) no true price reductions existed—or at the very least, any amounts of price reductions were exaggerated—in that Defendant's merchandise was rarely, if ever, previously offered for sale and/or sold at the higher Reference Prices for a reasonably substantial period of time, (b) the Reference Prices Defendant advertises in connection with its products do not reflect genuine former or prevailing market prices, and (c) Defendant's use of struck-through prices, "compare at" prices, and similar reference pricing formats falsely conveyed to consumers that the products were being offered at a meaningful discount from a bona fide higher price. Defendant also failed to adequately disclose the inflated shipping costs that effectively offset any purported discount in violation of Cal. Civ. Code §1770(a)(29).

127. Plaintiff and each member of the Class was harmed by Defendant's use of false Reference Prices, because Plaintiff and each member of the Class would not have made their purchase or would not have paid as much as they did but for Defendant's misrepresentations.

128. Plaintiff and each member of the Class was harmed because the value they received from Defendant's falsely advertised products was less than the money they paid.

129. Further, Plaintiff and each member of the Class was harmed by Defendant's use of false Reference Prices, because they did not receive the expected discount or benefit-of-the bargain advertised by Defendant.

130. Plaintiff seeks an injunction for Defendant's violation of the CLRA to enjoin Defendant's methods, acts, and practices of deceiving customers through their false and misleading advertisements and sales practices described above.

131. Plaintiff filed the original Complaint on May 22, 2026, seeking

injunctive relief under the CLRA. On June 3, 2026, Plaintiff sent a CLRA demand letter to Defendant's headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. More than thirty days have passed since Plaintiff sent his CLRA notice, and Defendant has not corrected or offered to correct the practices complained of. Pursuant to section 1782(d), Plaintiff now amends the Complaint to include a request for damages having complied with the statutory notice requirements.

132. Plaintiff seeks all monetary relief available under the CLRA, including punitive damages and reasonable attorney fees.

**FOURTH CLAIM FOR RELIEF**
**FRAUD (INTENTIONAL MISREPRESENTATIONS)**
**(By Plaintiff Against Defendant on Behalf of the California Class)**

133. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

134. Plaintiff brings this cause of action on behalf of himself and the California Class.

135. Defendant uniformly represented to all members of the Class during the Class Period in connection with their products that had a Reference Price. Defendant made this uniform representation by displaying on the Website a Reference Price substantially higher than the offered selling price, which is marked down or discounted from the Reference Price by a specified percentage discount or dollar amount.

136. Defendant's Reference Price representations are false. Among other things, Defendant's representations conveyed false information about the products Plaintiff and the Class purchased, namely that the products they purchased had sold in the recent past for a reasonably substantial period of time at the higher Reference Price displayed on Defendant's Website and/or in the prevailing market. The truth is

that Defendant rarely, if ever, previously offered for sale and/or sold those products at the higher Reference Price for any reasonably substantial period of time.

137. Defendant knew that its representations were false when it made them, or at the very least, it made the representations recklessly and without regard for their truth. In other words, Defendant knew that the products Plaintiff and the Class purchased had rarely, if ever, sold at the substantially higher Reference Price displayed on the Website in the recent past and/or in the prevailing market.

138. Defendant's representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have spent, purchase products they otherwise would not have purchased, and/or spend more money for a service or product than they otherwise would have absent the deceptive marketing scheme.

139. Defendant engaged in this fraud to the Plaintiff and the Class's detriment in order to increase Defendant's own sales and profits.

140. Plaintiff and the Class reasonably relied on Defendant's representations.

141. Plaintiff's reliance was justified because Defendant affirmatively represented through its Website that the Reference Price was the product's regular, original, or prevailing market price and that the sale price reflected a genuine discount. A reasonable consumer would have no reason to doubt the accuracy of this representation absent an investigation that Defendant's own deceptive tactics were designed to discourage.

142. The fact that other retailers may have offered the same product at lower prices does not negate Plaintiff's justifiable reliance on Defendant's own representations. A consumer is not required to investigate every competing retailer's prices before relying on a seller's affirmative misrepresentation about a product's value.

143. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the products they purchased from Defendant, or, at the very least, they would not have paid as much for the products as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

144. Further, Plaintiff and each member of the Class was harmed by Defendant's use of false Reference Prices, because they did not receive the expected discount or benefit-of-the bargain advertised by Defendant.

145. As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

146. Defendant undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiff and the Class, and also because Defendant's deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the Class. Based on the allegations above, Defendant's actions constituted oppression because Defendant's deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

## FIFTH CLAIM FOR RELIEF
## BREACH OF CONTRACT
**(By Plaintiff Against Defendant on Behalf of the Nationwide Class)**

147. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

148. Plaintiff brings this cause of action on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Class.

149. When Plaintiff visited Defendant's Website and places an order for the product, Plaintiff and Defendant entered into a binding contract for the sale of the product. The contract was formed through Defendant's offer on the Website, which displayed the product with specific price terms, delivery terms, representations about the product's regular price (market value), and the amount of discount Plaintiff would be receiving from that market value.

150. Those representations were specific material terms of the transaction and were part of the basis on which Plaintiff agreed to purchase the product. Plaintiff accepted that offer by placing the order and making payment.

151. Defendant's Website list the regular price (the market value) of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices and the prices paid by Plaintiff and putative class members.

152. The material terms of the contract included: (a) Defendant's representation that the product had a regular or list price equal to the Reference Price displayed on the Website; (b) Defendant's representation that the product was being offered at a discounted sale price representing a genuine markdown from the Reference Price; (c) Defendant's agreement to deliver the product to Plaintiff; and (d) Plaintiff's agreement to pay the stated sale price plus applicable delivery charges and taxes.

153. Plaintiff performed all of his obligations under the contract by paying all money owed for the items he purchased.

154. Defendant breached its contract by failing deliver a product having a market value equal to the Reference Price displayed on the Website and instead delivering a product that had a market value materially lower than the Reference Price and materially lower than the purported discounted price.

155. The product Plaintiff received therefore did not conform to the

contractual representations that were part of the basis of the bargain, including the representation that the Reference Price was the product's regular or prevailing price and that the sale reflected a genuine and rare markdown from that price.

156. Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase products on the Website. Plaintiff and members of the Nationwide Class were deprived of the benefit of their bargain because they paid for products represented to have a regular price and value equal to the displayed Reference Price and to be sold at a genuine discount, but received products for which those representations were not true.

157. As a direct and proximate result of Defendant's breach, Plaintiff and class members suffered damages in the form of the price premium they paid over and above the products' actual market values, including the difference between the amounts paid and the amounts they would have paid absent the contractual misrepresentations.

158. The material terms described above were applicable to Plaintiff and, on information and belief, were the same or materially similar terms governing the purchases of members of the putative Class. Defendant's failure to provide the products conforming to those terms breached each class member's contract.

159. Plaintiff and class members are entitled to recover all damages available for Defendant's breaches, including expectation damages, the benefit of their bargained-for exchange, and price premium resulting from Defendant's failure to deliver Products having the represented regular prices and genuine discounts.

160. Plaintiff and class members have suffered damages in an amount to be established at trial.

161. Plaintiff provided Defendant with notice of its breach through written correspondence sent to Defendant's headquarters.

162. For the breach of contract claims, Plaintiff seeks all damages available

including expectation damages or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's breach.

**SIXTH CLAIM FOR RELIEF**
**BREACH OF EXPRESS WARRANTY**
**(By Plaintiff Against Defendant on Behalf of the California Class)**

163. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

164. Plaintiff brings this cause of action on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Class.

165. Defendant, as the marketer, distributor, supplier, and/or seller of its products, issued material, written warranties by advertising that the products offered for sale on the Website had a prevailing market value equal to the Reference Price. This was an affirmation of fact about the products (i.e., a representation about the market value) and a promise relating to the goods.

166. The Reference Price representation went beyond a mere statement of value because it conveyed specific factual information, namely, that the product had previously been sold at the Reference Price for a substantial period, that the sale price represented a genuine limited-time reduction, and that the product would return to the Reference Price after the promotion ended.

167. This representation and warranty was part of the basis of the bargain because Defendant intended Plaintiff and member of the class to read and rely on it to induce purchases, and Plaintiff and members of the subclass did read and rely on it in making their purchase decisions.

168. The warranty was breached because the Reference Price did not reflect the product's actual prevailing market price. The product had not been sold at the Reference Price for any substantial period, and the purported discount was not genuine.

169. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's breach, and the breach was a substantial factor in causing harm, because Plaintiff and class members (a) would not have purchased the products if they had known that the warranty was false, (b) overpaid for the products because the products were sold at a price premium due to the warranty, and/or (c) received products that did not conform to the promised warranties regarding their market value.

170. For the breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and damages measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's breach.

**SEVENTH CLAIM FOR RELIEF**
**QUASI-CONTRACT/UNJUST ENRICHMENT**
**(By Plaintiff Against Defendant on Behalf of the Class)**

171. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein. This claim is expressly pleaded in the alternative to the breach of contract claim pursuant to Federal Rule of Civil Procedure 8(d)(2).

172. Plaintiff brings this cause of action on behalf of himself and the National Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Class. In the alternative to the existence of an enforceable contract, Plaintiff alleges that no enforceable contract governs the parties' dispute regarding the truthfulness of Defendant's pricing representations, and therefore seeks relief in quasi-contract.

173. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Defendant's products and to pay a price premium for these products.

174. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

175. Defendant was unjustly enriched because it obtained the price premium through deceptive pricing practices. It would be unjust and inequitable for Defendant to retain the benefit of the price premium obtained through deception, particularly where Plaintiff paid more than he otherwise would have paid for the product.

176. Plaintiff and the class seek restitution, and in the alternative, rescission.

177. For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>EIGHTH CLAIM FOR RELIEF</u>**
**NEGLIGENT MISREPRESENTATION**
**(By Plaintiff Against Defendant on Behalf of the California Class)**

178. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

179. Plaintiff brings this cause of action on behalf of himself and the California Class.

180. As alleged in detail above, Defendant made affirmative misrepresentations to Plaintiff and the Class concerning the products' regular prices, discounts and the urgency of the purported sale. These were material representations of past or existing facts, not merely opinions or promises about future performance.

181. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made. Like any company, Defendant tracks its own sales and its own transactions. It knows that its sales persist and that its advertised regular prices are not really what consumers regularly pay.

182. Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them

in deciding whether to purchase the products and how much to pay.

183. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Defendant's products.

184. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

185. Defendant's misrepresentations arose from Defendant's general duty not to make negligent misstatements of material fact to consumers. In the alternative, Defendant owed Plaintiff a duty of care independent of any contractual relationship because Defendant held itself out as an authority on home appliances by calling itself "Your Appliance Authority," was in a superior position to know the true market prices and prevailing values of the products it sold, and Plaintiff reasonably relied on Defendant's expertise and superior knowledge in making his purchasing decision.

186. Defendant had no reasonable grounds for believing its Reference Price representations were true because Defendant tracks its own sales data, transaction histories, and pricing. Defendant therefore knew or should have known that the Reference Prices did not reflect prices at which the products were actually sold for any substantial period and exceeded the prevailing market prices charged by competing retailers.

187. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the products had they known that the representations were false, (b) they overpaid for the products because the products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

188. Plaintiff seeks all damages available, including expectation damages

and damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's negligent misrepresentations.

## VIII. PRAYER FOR RELIEF

189. WHEREFORE, Plaintiff prays for judgment against Defendant on behalf of himself and those similarly situated as follows:

**ON THE FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§17200 *et seq.*)**

A. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct their deceptive and misleading advertising and pricing practices.

C. For an award of restitution and disgorgement of moneys paid that Defendant obtained as a result of their unlawful, unfair, and fraudulent business practices, and as a result of their unfair, deceptive, untrue, and misleading advertising, all as described above.

D. For an award of equitable and declaratory relief.

E. For pre and post judgment interest and costs of suit incurred herein.

F. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

G. For such other and further relief as the Court may deem just and proper.

**ON THE SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF THE FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§17500 *et seq.***

H. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be

designated as class counsel.

I. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct their deceptive and misleading advertising and pricing practices.

J. For an award of restitution and disgorgement of moneys paid that Defendant obtained as a result of their unlawful, unfair, and fraudulent business practices, and as a result of their unfair, deceptive, untrue, and misleading advertising, all as described above.

K. For an award of equitable and declaratory relief.

L. For pre and post judgment interest and costs of suit incurred herein.

M. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

N. For such other and further relief as the Court may deem just and proper.

**ON THE THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§1750 *et seq.*)**

O. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

P. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct their deceptive and misleading advertising and pricing practices.

Q. For pre and post judgment interest and costs of suit incurred herein.

R. For an award of equitable and declaratory relief.

S. For damages in an amount to be proven at trial.

T. For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

U. For such other and further relief as the Court may deem just and proper.

**ON THE FOURTH CLAIM FOR RELIEF FOR FRAUD (AFFIRMATIVE MISREPRESENTATIONS)**

V. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

W. For rescission and revocation.

X. For compensatory damages in an amount to be proven at trial.

Y. For punitive damages in an amount sufficient to punish Defendant and to deter it from engaging in wrongful conduct in the future.

Z. For pre and post judgment interest and costs of suit incurred herein.

AA. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

BB. For such other and further relief as the Court may deem just and proper.

**ON THE FIFTH CLAIM FOR RELIEF FOR BREACH OF CONTRACT**

CC. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

DD. For compensatory damages in an amount to be proven at trial.

EE. For pre and post judgment interest and costs of suit incurred herein.

FF. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

GG. For such other and further relief as the Court may deem just and proper.

**ON THE SIXTH CLAIM FOR RELIEF FOR BREACH OF EXPRESS WARRANTY**

HH. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

II. For compensatory damages in an amount to be proven at trial.

JJ. For pre and post judgment interest and costs of suit incurred herein.

KK. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

LL. For such other and further relief as the Court may deem just and proper.

**ON THE SEVENTH CLAIM FOR RELIEF FOR QUASI-CONTRACT/UNJUST ENRICHMENT**

MM. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

NN. For restitution in an amount to be proven at trial.

OO. For rescission and revocation.

PP. For pre and post judgment interest and costs of suit incurred herein.

QQ. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

RR. For such other and further relief as the Court may deem just and proper.

**ON THE EIGHTH CLAIM FOR RELIEF FOR NEGLIGENT MISREPRESENTATION**

SS. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

TT. For rescission and revocation.

UU. For compensatory damages in an amount to be proven at trial.

VV. For pre and post judgment interest and costs of suit incurred herein.

WW. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

XX. For such other and further relief as the Court may deem just and proper.

Dated: September 9, 2026

THE RYAN LAW GROUP

By: /s/ Andrew Ryan
Andrew Ryan

Attorneys for Plaintiff
Stepan Rudenko

**JURY DEMAND**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all triable issues.

Dated: September 9, 2026

THE RYAN LAW GROUP

By: /s/ Andrew Ryan
Andrew Ryan

Attorneys for Plaintiff
Stepan Rudenko